IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:18-CR-452-2-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | UNITED STATES' RESPONSE TO |
| | ) | DEFENDANT'S MOTION TO |
| | ) | RELEASE SEIZED ASSETS |
| TATYANA ANATOLYEVNA TEYF, | ) | |
| a/k/a TATIANA TEYF | ) | |
| Defendant. | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to defendant's motion to release seized assets, and states unto the Court the following: the vast majority of assets seized by the government are specifically related to a finding of probable cause by the grand jury, not to be reviewed by the Court; of the remaining assets, the government opposes release of two bank accounts, but does not oppose the release of some jewelry should defendant meet her burden under United States v. Farmer.

## I. STATEMENT OF THE FACTS AND ISSUES

On November 8, 2018, the grand jury returned a 29-count indictment against defendant and others, specifically charging defendant with involvement in a spending money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and 19 substantive counts of spending money laundering in violation of 18 U.S.C. § 1957.

On December 5, 2018, the government filed applications for eight (8) seizure warrants pursuant to 18 U.S.C. §§ 981 and 982.[1] The resulting warrants allowed

---

[1] See 5:18-MJ-2082, 5:18-MJ-2083, 5:18-MJ-2084, 5:18-MJ-2085, 5:18-MJ-2086,

seizure of four (4) vehicles and 23 accounts at four different financial institutions.[2]

On December 6, 2018, a superseding indictment was returned by the grand jury. That superseding indictment alleged the defendant also violated 8 U.S.C. § 1324 by engaging in a conspiracy to harbor illegal aliens, and it added four substantive counts of spending money laundering against defendant Leonid Teyf relating to the purchase of three of the vehicles to be seized pursuant to the warrant issued the day previous, and for the purchase of $2,600,000 in artwork. D.E. 20. On December 6, 2018, law enforcement conducted searches of the main home of defendant and co-defendant Leonid Teyf, of a townhome owned by Leonid Teyf, of vehicles and of the belongings of co-conspirators. Numerous firearms, approximately $100,000 in U.S. currency, jewelry, valued at approximately $333,272, and artwork with an estimated value of $560,000 were seized.

On January 11, 2019, a ninth application for a seizure warrant was filed, seeking seizure of an additional account at one of the four previously identified financial institutions. It also sought authority to seize an account listed on a previous warrant that the bank had been unable to effectuate.[3] A tenth application for a seizure warrant was filed that same day, and a seizure warrant was obtained for three accounts located in defendant's name at a fifth financial institution.[4]

On February 6, 2019, a second superseding indictment was returned by the

---

5:18-MJ-2088, 5:18-MJ-2089, 5:18-MJ-2090.
[2] One of the four vehicles was never located (5:18-MJ-2082) and 4 of the accounts had been closed prior to execution of the approved warrants. Two of these accounts were from the warrant in 5:18-MJ-2088, and two from the warrant in 5:18-MJ-2090.
[3] 5:19-MJ-1054
[4] 5:19-MJ-1053.

grand jury, adding five (5) substantive spending money laundering counts, four (4) against defendant, in violation of 18 U.S.C. § 1957. D.E. 127. A seizure warrant was obtained for a bank account opened by defendant in January 2019.[5]

Upon information and belief, defendant had an interest in ten of the various bank accounts seized by warrant.

The defendant now moves the court to release her seized assets. In her motion, she adopts all motions and arguments in support of release of the seized assets made by her co-defendant Leonid Teyf, and states her own arguments in support of release as well. Summarized, the government interprets defendant's motion as including,

1. Allegations which challenge the sufficiency of probable cause underlying the various seizures;

2. Allegations of false and misleading statements contained in the affidavits in support of the warrants;

3. Allegations that the government exceeded the scope of the search warrant of the home at 6510 New Market Way by seizing jewelry and artwork;

4. Allegations that the seized assets included assets untainted by the alleged criminal acts; and

5. Allegations that the government did not have probable cause to file lis pendens against various real property owned by defendant and/or Leonid Teyf.

The government had probable cause for the seizure of each and every item taken; the affidavits for such search and seizures were executed in good faith and free from the types of false and misleading statements which detract from probable

_____

[5] 5:19-MJ-1243.

cause; the government did not need a warrant for the seizure of the jewelry and art; and probable cause is not needed to file lis pendens as was done in this case. As to seizure of untainted assets, the government agrees that it does not at this time have documentary evidence linking the purchase of the jewelry to tainted funds, and agrees in light of the Court's finding of indigency, the jewelry could be made available to defendant for attorney fees, upon a showing of additional factual predicates.

## II. <u>ARGUMENT</u>

Title 21 United States Code, Section 853(f) authorizes a court to issue a warrant for the seizure of any property subject to criminal forfeiture. 21 U.S.C. § 853(f). A criminal seizure warrant is issued in the same manner as any other warrant issued under Rule 41 of the Federal Rules of Criminal Procedure. <u>Id.</u> The government must establish probable cause to believe that the property in question is subject to forfeiture pursuant to an applicable criminal forfeiture statute. <u>Id.</u> Pre-trial restraint of such assets is "constitutionally permissible whenever there is probable cause to believe . . . (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." <u>Kaley v. United States</u>, 571 U.A. 320, 323-24 (2014) (internal citation omitted). If a defendant has been indicted for the offense pertaining to forfeiture, the grand jury's finding of probable cause is conclusive and is not to be revisited by a court assessing the validity of the pre-trial restraint of assets. <u>Kaley</u>, 571 U.S. at 328-330. Moreover, there is no right to use funds seized by the government, even to pay for an attorney in defense of the criminal action, when there is probable cause to believe those funds will "ultimately be proved forfeitable." <u>United States v.</u>

Monsanto, 491 U.S. 600, 615 (1989).

If any property subject to forfeiture under § 853(f) cannot be located, has been transferred to another, has been substantially diminished in value, or commingled with other property which cannot be divided with difficulty, Title 21, United States Code, Section 853(p) allows forfeiture of property which would "substitute" for the originally forfeitable property. 21 U.S.C. § 853. There is no authority "to restrain substitute assets prior to trial." United States v. Chamberlain, 868 F.3d 290, 296 (4th Cir. 2017).

Thus, a pretrial challenge to the restraint of assets is proper only in limited circumstances. Defendants could claim a restrained asset is a substitute asset, purchased innocently and without connection to criminal acts, in which case the substitute asset should be released in its entirety. Or, as to forfeitable property under § 853(f), due process concerns require consideration of three factors to determine if a defendant is even entitled to a post-seizure, pretrial adversary hearing: 1) whether a private interest will be affected by the official action; 2) the risk of erroneous deprivation of the private interest and the added value, if any, by procedural safeguards; and 3) the government's interest, including consideration of the burden additional procedural safeguards would cause. United States v. Farmer, 274 F.3d 800 (4th Cir. 2001), citing Mathews v. Eldridge, 424 U.S. 319, 344-45 (1976). It is the government's position, explained below, that all assets seized in this case are forfeitable assets, and the defendant must make the showing required by Farmer.

To gain a pretrial, adversarial hearing, a defendant thus must make a claim to a "private interest." Farmer, 274 F.3d at 804. A threshold showing that a

defendant is without funds to hire the attorney of his choice is sufficient to this end, but "if a defendant does not make such a threshold showing of need to use wrongly seized assets to pay his attorneys, then the private interest of the <u>Mathews</u> calculus drops out of the picture, tipping the balance of interest against a post-restraint hearing." <u>Id.</u> (internal quotations and citation omitted). "A defendant must show a bona fide need to utilize [seized] assets to conduct his defense in order to be entitled to a hearing. <u>Id.</u> (internal quotations and citation omitted).

When a defendant makes the threshold showing, however, the resulting hearing is of limited purpose. <u>Id.</u> at 805. The hearing is to allow the "opportunity for [the defendant] to prove by a preponderance of the evidence that the government seized untainted assets without probable cause and that he needs those same assets to hire counsel." <u>Id.</u> At the hearing, the government may present evidence to show the defendant has other assets which could be used to pay attorneys, or evidence establishing probable cause to believe the assets are in fact tainted and forfeitable. <u>Id.</u>

### A.    Probable Cause for Seizures

The defendant argues that the seizure warrants lack sufficient probable cause to have legally seized the assets. On review, a magistrate judge's finding of probable cause should be accorded great deference in challenges to pretrial warrants to seize assets. <u>Illinois v. Gates,</u> 462 U.S. 213, 236 (1983). The bulk of the argument made by Leonid Teyf on this point, and adopted by defendant, is that the affidavits in support of seizure make no connection between cash couriered in Russia by a confidential source, and the monies ultimately wired to the United States and spent by the Teyfs. "An assessment of the presence of probable cause must be based on

the totality of the relevant circumstances," and a "judicial officer must make a

practical, commonsense decision whether . . . there is a fair probability" the assets

are connected to a particular crime. <u>United States v. Allen</u>, 631 F.3d 164, 172 (4th

Cir. 2011). The affidavits set forth in small part:

- TEYF conspired with senior Russian government officials to obtain bribe/kickbacks from subcontractors of large Russian military contracts;
- TEYF employed others to facilitate the transfer of his portion of the proceeds from the criminal scheme to financial institutions in foreign countries, largely consisting of the high-risk jurisdictions of Cyprus and Hong Kong.
- TEYF received 294 wires from foreign sources worth over $39,500,000, into bank accounts in the name of TEYF, Cotter, and T. Teyf, who stated to U.S. Officials that she was a homemaker. TEYF and co-conspirators attempted to conceal the source of the foreign wire by using shell corporations organized in countries known to harbor money laundering operations;
- The wires received by TEYF included descriptions such as "Payment for Buying Business," for approximately $9,285,000 despite declarations made to U.S. Officials that the owners of FG Delta Plus did not include TEYF; "Payment for Services"/"Payment for Goods" for approximately $8,160,000, despite TEYF reporting a collective net loss in the years 2011 – 2014 on his U.S. Individual Income Tax Returns; and "Transfer for Own Funds" of approximately $4,040,000, despite declaring that neither TEYF or T. Teyf had a financial interest in or signature authority over a financial account located in a foreign country;
- Since January 19, 2011, TEYF and others have made in excess of 575 transfers from and between the four (4) accounts which were used to receive the international wires and other accounts.

This is certainly sufficient evidence to determine there is a fair probability the

assets are connected to the charged crimes. Indeed, as will be mentioned below,

most of the assets are themselves the subject of a finding of probable cause by the

grand jury that they are connected to the crimes – and particularly given the

deference required of the magistrate judge's findings, the argument the warrants

lacked probable cause is without merit.

7

In any event, even had the warrants been invalid on their face, the remedy would not be return of the seized assets. United States v. Martin, 662 F.3d 301, 306 (4th Cir. 2011). While an invalid seizure may have evidentiary consequences, it does not "immunize the [subject] property from forfeiture" as long as the government can sustain its forfeiture claim. Martin, 662 F.3d at 306. Here, the grand jury itself determined probable cause not only that the offense of spending money laundering occurred, but that a number of the accounts and assets were specifically involved in that money laundering--those accounts and items listed in Counts 2 through 26 and 33 through 41, as shown in the table below. As to these accounts and assets, the grand jury's determination is conclusive. Kaley, 571 U.S. at 331.

| Asset | Count No. | In Forf Notice | Sz Wt Case No | Sz Wt date |
|-------|-----------|----------------|---------------|------------|
| BBT #1502 | 7 | Y | 5:18-MJ-2083 | 12/5/2018 |
| BOA #1991 | 5, 6, 7, 8, 19, 36, 41 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #3905 | 11, 12, 40 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #4884 | 2 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #3285 | 9 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #6014 | 5, 10, 13-20, 33, 34, 40 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #3844 | 10, 15 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #9409 | 21-23 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #9748 | 20, 37 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #1314 | 12 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #7892 | 14 | Y | 5:18-MJ-2088 | 12/5/2018 |
| FCB #3951 | 25, 26 | Y | 5:18-MJ-2090 | 12/5/2018 |
| ML #0857 | 37 | Y | 5:19-MJ-1053 | 1/11/2019 |
| ML #0890 | 39 | Y | 5:19-MJ-1053 | 1/11/2019 |
| ML #1096 | 38 | Y | 5:19-MJ-1053 | 1/11/2019 |
| PNC 4726 | 8, 35 | Y | 5:18-MJ-2085 | 12/5/2018 |
| FCB #3812 | 6 | Y | 5:18-MJ-2090 | 12/5/2018 |
| BOA #1736 | 2, 13, 18 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #1563 | 16 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #0990 | 24 | Y | 5:19-MJ-1054 | 1/11/2019 |

| Asset | Count No. | In Forf Notice | Sz Wt Case No | Sz Wt date |
|---|---|---|---|---|
| Artwork | 36 | y | warrantless sz on PC | |
| 2014 Mercedes S550V | 33 | y | 5:18-MJ-2084 | 12/5/2018 |
| 2018 Mercedes S560V | 34 | y | 5:18-MJ-2089 | 12/5/2018 |
| 2018 Mercedes S63 | 35 | y | 5:18-MJ-2086 | 12/5/2018 |

Although not specifically argued by either defendant, there were two bank accounts seized, owned at least in part by this defendant, which were not the subject of money laundering counts in the second superseding indictment. These two accounts are FCB #0918 (5:18-MJ-2090) and BBT # 2890 (5:19-MJ-1243). Both are traceable to the SUA proceeds and there was probable cause for the seizure. As noted in paragraph 17 of the affidavit in 5:19-MJ-1243, one of the four original accounts funded by the transfer of the bribe proceeds, BOA #6014, transferred money to BOA 9748, which transferred money to FCB #3951, which transferred money to FCB #0918 (subject of 5:18-MJ-2090 seizure), which had transferred funds to an account that was unknown to the government at the time of the December seizures, BOA #8455, which defendant then used, after her arrest on the instant charges and after the seizures of the other accounts, to open and fund BBT #2890 (subject of 5:19-MJ-1243). Under Monsanto, these accounts, too, are properly restrained.

## B.     There are no false or misleading statements in the affidavits.

Leonid Teyf argues there were false and misleading statements in the affidavit sufficient to warrant a hearing under Franks v. Delaware, 438 U.S. 154

(1978). Although unclear whether the instant defendant intended to adopt this argument as well, it is addressed here in an overabundance of caution. Under scrutiny, Leonid Teyf's arguments wilt for lack of substance and fall far short of necessitating a <u>Franks</u> hearing. First, Leonid claims the affidavit "repeatedly characterize[s]" the alleged criminal conduct as extortion. D.E. 182 at 6. The affidavits do use the verb "extort," in three places, simply to describe the act of obtaining money that represents illegal bribes or kickbacks; the word is never used as a noun with a legally operative meaning to describe a particular type of criminal offense. It is used in a heading above ¶ 19, "Scheme to Extort Bribes/Kickbacks," in a reference within ¶ 19 to "kickbacks he extorted from subcontractors," and in ¶ 26, explaining in summary that the scheme was to "extort bribe/kickbacks from subcontractors. <u>See</u> <u>e.g.</u>, 5:19-MJ-1243 and 5:18-MJ-2090, heading above ¶ 62, ¶ 62, and ¶ 79. The affidavits from these two examples were 21 and 50 pages long, respectively. Even were the allegations false, which the government disputes, this minimal reference to extortion, and as a descriptor to the crime of bribery, hardly affects probable cause. The word could be deleted in its entirety, or changed to any verb such as received or obtained, and probable cause is not impacted.

Second, Leonid Teyf relies on one document from discovery to assert both that allegations in the affidavit that CS-1 saw reference to bribe proceeds being transferred to Cyprus, was false, as the one document mentions only "money," and that a material omission was made because the same document indicates CS-1 saw the monies in 2013, a time unlikely to have been part of the scheme. Discovery has included tens of thousands of pages of documents and records, the government submits this one document, a summary by an agent of statements made by the CS,

does not rise to a "substantial preliminary showing" of deliberate falsehood or omission. Franks, 438 U.S. 155-56; see also United States v. Colkley, 899 F2d 297, 301 (4th Cir. 1990).

Finally, Leonid Teyf argued it was misleading to the magistrate judge to include in the affidavit that the countries of origin of the majority of the funds at issue were "jurisdictions of primary concern" and/or "jurisdictions of concern" in regard to money laundering, without including the fact that the United States was also a jurisdiction of primary concern. This argument is nonsensical. The fact that the United States is also a jurisdiction of primary concern is of no import – negative or positive – to establishing probable cause concerning money coming from Cyprus and the British Virgin Islands.

Leonid Teyf claims that his arguments combine to render the affidavits incapable of establishing probable cause. D.E. 182 at 10. However, three unpersuasive arguments do not transform character in the aggregate. Rather, they remain, individually and in combination, unpersuasive. As discussed above, the grand jury's finding of probable cause both as to the existence of a specified unlawful activity and as to the involvement of specific property in spending money laundering, is conclusive as to those assets. Even so, should Teyf succeed in establishing a defect in the seizure warrant, the remedy at most would be suppression of the seized items as evidence. Martin, 662 F.3d at 306. The defendant has not stated sufficient cause for a Franks hearing.

## C. The government did not exceed the scope of the search warrants.

Leonid Teyf next argues that agents exceeded the scope of the search warrants authorized because they seized more than 70 pieces of jewelry from the

New Market Way residence that did not fit within the enumerated categories of items authorized for seizure. The instant defendant adds a claim as to the artwork, as well. However, the warrant did allow seizures of items other than those categories specifically enumerated, as authorized seizures could "include, *but are not limited* to the following, but seizure is permitted only to the extent such items constitute or contain evidence, fruits and instrumentalities of the described crime." Warrant, 5:18-MJ-2079 (emphasis added). There is a fair probability the jewelry and the artwork are fruits of the described crime.

Additionally, 18 U.S.C. § 981(b)(2) provides that "a seizure may be made without a warrant if … (B) there is probable cause to believe that the property is subject to forfeiture and—(i) the seizure is made pursuant to a lawful arrest or search; or (ii) another exception to the Fourth Amendment warrant requirement would apply." Here, the seizure of the jewelry and artwork was made incident to a lawful search. Furthermore, the "plain view" exception to the Fourth Amendment, in conjunction with 18 U.S.C. § 981(b)(2), permits agents to "seize articles [subject to forfeiture] that they come across while performing a search in a given area pursuant to a valid search warrant." United States v. Uzenski, 434 F.3d 690, 707 (4th Cir. 2006). Thus, courts have routinely upheld the seizure for purposes of forfeiture of items like jewelry and vehicles that are discovered during the execution of a search warrant even if the items were not explicitly named therein. See, e.g., United States v. $149,442.43, 965 F.2d 868, 875 (10th Cir. 1992) (firearms, jewelry, and vehicles may be seized as proceeds or property used to facilitate when found incident to execution of search warrant even if items were not specifically listed in the warrant); United States v. Nelson, 530 F. Supp. 2d 719, 729–30 (D. Md. 2008)

(seizure of two vehicles from defendant's residence while agents were there to execute a search warrant was proper even though the vehicles were not named in the warrant because the agents had probable cause to believe the vehicles had previously been used to transport drugs and thus were subject to forfeiture).

There was authority to seize the artwork and jewelry, either as fruits of the described crime under the search warrant itself, or warrantlessly as potentially forfeitable items. $149,442.43, 965 F.2d at 875. As to the artwork, a receipt was found at the time of the search which indicated when the artwork was purchased, and from what account the funds came. In fact, following the seizure of the artwork, a superseding charge was specifically added to address it. See Count 36. For all the reasons above in II.A., the artwork was appropriately seized, is tainted, and cannot be accessed by the defendant to pay for her attorney fees.

The jewelry seized may present a different scenario. Although receipts were located during the search that indicated at least some of it was purchased during the timeframe of the charged conduct, unlike the artwork receipt, they did not show the specific source of funds used. Since defendant identified herself as a homemaker on immigration documents, did not report any earned income on her tax returns, and did not appear to have any source of legitimate funds with which she could have acquired this jewelry, there is a fair probability it was purchased with tainted funds. That being the case, the jewelry would be directly forfeitable under § 853(f)and would not constitute "substitute property." However, unlike the artwork, the government currently does not have documentary evidence the specific accounts

from which the money came to purchase the various pieces.[6] To this extent, the defendant may have right to access these assets to pay for her attorney of choice. This gives rise to three preliminary determinations for the Court to make.

First, the defendant would have to show by a preponderance of evidence that the jewelry is in fact untainted. Farmer, at 805. Second, the government is unable determine who is the true owner of the jewelry. It has reviewed the judgment for absolute divorce filed by Leonid Teyf and the defendant on March 20, 2017, but only one ring is mentioned. None of the other jewelry is mentioned, including numerous Rolex watches, earrings, pendants, etc. Nor is there any general reference to "jewelry." There is no listing regarding jewelry in the judgment's Exhibit C, which was the list of personal property to be equally divided. Furthermore, both Leonid and Tatyana Teyf have filed administrative claims with the FBI, both claiming ownership of some the same pieces of jewelry. The government, therefore, does not know which defendant would have a right to the return of any particular piece jewelry.

Third, the defendant's burden at any review of assets for attorney's fees includes disclosure of all assets, liabilities, sources of income, how much counsel has already been paid, and how much more is needed for the representation. United States v. Edwards, 856 F. Supp. 2d 42, 45-46 (D.D.C. 2012). Here, defendant has not yet met her burden of disclosing the amount of assets needed to be released to retain an attorney and to cover the expected costs of her legal defense, and the court should only release assets to the extent necessary to fund reasonably expected legal

---

[6] Process is being served upon the merchant of the known pieces, collectively valued at $128,251, to determine the source of the funds used for the purchases.

defense costs. Also, as previously noted, the government may present evidence to show the defendant has other assets which could be used to pay attorneys—such as a $45,000 Toyota purchased by defendant in January of this calendar year, paid in full with cashier's checks.

If these three issues are resolved to the Court's satisfaction, the government is agreeable to releasing jewelry necessary for fees of counsel of defendant's choice.

**D. The only potentially "untainted" asset in the custody of the government is jewelry.**

As explained above, the vast majority of assets were specifically included in a substantive money laundering count, conclusively determining there is probable cause those assets are tainted by criminal conduct. As to the two bank accounts owned by defendant which were not charged, the government has shown probable cause that money, too, was tainted. Paragraph 17 of the affidavit in 5:19-MJ-1243, one of the four original accounts funded by the transfer of the bribe proceeds, BOA #6014, transferred money to BOA 9748, which transferred money to FCB #3951, which transferred money to FCB #0918 (subject of 5:18-MJ-2090 seizure), which had transferred funds to an account that was unknown to the government at the time of the December seizures, BOA #8455, which defendant then used, after her arrest on the instant charges and after the seizures of the other accounts, to open and fund BBT #2890 (subject of 5:19-MJ-1243).

Defendant suggests that the government is obliged to provide a detailed tracing analysis of the SUA proceeds from one account to another, and is limited to seizing only what can be shown to be such proceeds without touching what may be clean money that has been comingled with the SUA proceeds. This argument is

wrong on two accounts.

First, the tracing requirement only applies when the government is seeking to forfeit criminal proceeds as proceeds. But here, the government's theory of forfeiture is predicated on violations of the money laundering statutes, and pursuant to 18 U.S.C. § 982(a)(1), all property "involved in" the offense is subject to forfeiture. Thus, the directly forfeitable (i.e., "tainted") property for purposes of a money laundering violation is not just the specified amount of criminal proceeds within a financial account, but can encompass the entire account (including any "clean" money comingled with it) that was used to launder the tainted money. See, e.g., United States v. $688,670.42, 449 F. App'x 871, 877 (11th Cir. 2011) (distinguishing between forfeiture of proceeds "traceable to" fraud under 18 U.S.C. § 981(a)(1)(C), and forfeiture of property "involved in" money laundering under 18 U.S.C. § 982(a)(1), only the latter of which would permit the forfeiture of the "entire balance" of a bank account). The same reasoning applies to the real and personal property identified for forfeiture in this case. See In re 650 Fifth Ave., 777 F. Supp. 2d 529, 566 n.11 (S.D.N.Y. 2011) (noting that under a money laundering theory, real property purchased or improved with laundered funds may be forfeited in its entirety as "involved in" property; forfeiture need not be proportional to the amount of tainted funds invested).

The defendants' reliance on the Fourth Circuit case United States v. Miller, 911 F.3d 229 (2018) is wholly misplaced, and this case actually supports the government's position as articulated above. In Miller, the court analyzed the forfeitability of certain property under two separate theories: as property "involved in" money laundering, and as proceeds "traceable to" fraud proceeds. The tracing

analysis undertaken by the <u>Miller</u> court, including the use of LIBR (lowest intermediate balance rule) [7], is all subsumed under the latter issue – which is not the theory of forfeiture advanced by the government in this case. While discussing the "involved in" theory relevant here, the <u>Miller</u> court twice emphasized that "[p]roperty involved in a money laundering offense is forfeitable in its entirety," even if legitimate funds have also been invested in the property or its value at the time of forfeiture exceeds the amount of tainted money funneled into the asset. <u>Miller</u>, 911 F.3d at 232, 234. <u>See</u> <u>also</u> <u>United States v. Kivanc</u>, 714 F.3d 782, 794 (4th Cir. 2013) ("[W]hen legitimate funds are commingled with property involved in money laundering or purchased with criminally derived proceeds, the entire property, including the legitimate funds, is subject to forfeiture."); <u>United States v. McGauley</u>, 279 F.3d 62, 75-76 (1st Cir. 2002). Furthermore, the value of the property that the government has identified for forfeiture in this case is less than half of the $39.5 million that was initially laundered through U.S. financial institutions. In contrast to the massive, overreaching forfeiture painted by Leonid Teyf, purportedly caused by the government's accounting method (D.E. 182 at 12), the government has seized approximately $9,150,000 from bank accounts. All property restrained, including those bank accounts, jewelry, vehicles, artwork, and

---

[7] Furthermore, the LIBR is applicable only when the government applies a "proceeds-in, last-out" tracing analysis to funds remaining in a particular account. <u>See</u> <u>United States v. Banco Cafetero Panama</u>, 797 F.2d 1154, 1159 (2d Cir. 1986); <u>see also Miller</u>, 911 F.3d at 235 ("LIBR circumscribes what can be traced into an account, rather than out of it."). However, the government may also elect to apply a "proceeds-in, first-out" rule. <u>Banco Cafetero</u>, 797 F.2d at 1159-60. Thus, every time cash is withdrawn, transferred or spent from a tainted account, the government may assume that tainted money was used and equally taints the account or assets into which the funds were put.

real property against which there are lis pendens filed, total a value less than $17,000,000.

Second, it is important to recall that the standard at this stage is merely probable cause, while defendants seem to be demanding a higher standard that requires every dollar to be traced utilizing accepted accounting principles. "Probable cause to believe the [bank account] funds are traceable to illegal activity does not require itemized proof; the Government need show only a fair probability the funds are traceable to illegal activity." United States v. Cobb, 2015 WL 518548, at *4 (D. Nev. Feb. 9, 2015). Thus, evidence that "a majority of funds" were traceable to illegal activities has been deemed sufficient to seize an entire account. Id. But even to sustain a conviction for money laundering, "the government is not required to prove that no 'untainted' funds were involved, or that the funds used in the transaction were exclusively derived from the [SUA]," or to "trace each dollar of the transaction to the criminal, as opposed to the non-criminal activity." United States v. Moore, 27 F.3d 969, 976-77 (4th Cir. 1994).

Here, the government has established probable cause to believe that the $39.4 million that was laundered into the United States through various offshore accounts was proceeds of specified unlawful activity. That money was then transferred among and between more than twenty different bank accounts; ownership of the accounts was transferred among individuals and back again; and the funds were used to invest in legitimate business and purchase assets like real estate, vehicles, artwork and jewelry. That the "tainted" funds have been put through a series of transactions that render them difficult to trace, or are comingled with "untainted" funds, is the very essence of what makes this a concealment money

laundering conspiracy as charged in Count One. At a minimum, the government has demonstrated that probable cause exists to believe that each of the bank accounts and other pieces of property seized and/or listed in the Indictment were involved in one or more money laundering transactions, and their pretrial seizure and restraint are therefore proper.

   **E.    Probable cause is not necessary for lis pendens.**

   Defendant's final argument is that the government does not have probable cause to place lis pendens on property owned by her.   The filing of a lis pendens as to property alleged to be forfeitable does not constitute a pre-judgment seizure. United States v. Borne, 2003 WL 22836059, at *2 (W.D. La. Nov. 25, 2003).   Its purpose is merely to give notice to the world of a pending claim that may affect title; it creates no additional right in the property on the part of the government, nor does it prevent the owner from being able to use and inhabit the property, receive rental income from it, or even alienate it.  Diaz v. Paterson, 547 F.3d 88, 98 (2d Cir. 2008). Thus, the filing of a lis pendens does not implicate a property owner's due process rights or entitle a criminal defendant to any probable cause hearing on the legitimacy of the government's forfeiture allegation as envisioned by Farmer and Monsanto.   United States v. Register, 182 F.3d 820, 835-37 (11th Cir. 1999). Nevertheless, the government submits that probable cause exists to believe that the real property is subject to forfeiture for the same reasons as set forth above. Namely, the three properties in which defendant has an ownership interest, 6510 New Market Way, 7900 Hardwick, and 133 E Hargett St., were all subject of specific counts charging violations of 18 U.S.C. § 1957, and that determination by the grand jury is conclusive.  See Counts 9, 11, and 40 of D.E. 127; Kaley, 571 U.S. 331.

## III. CONCLUSION

For all the above-stated reasons, the defendant's motion to release properties should be denied without hearing as to all assets but for the jewelry. Hearing should be had on the jewelry to allow the defendant to prove 1) by a preponderance that it is untainted by criminal proceeds, 2) that she is entitled, over Leonid Teyf, to any particular piece of jewelry, and 3) the amount she has spent and will need to spend on her defense. Only then should the Court order release of sufficient, untainted assets in which she has an interest to cover those fees.

Respectfully submitted this 26th day of March 2019.


ROBERT J. HIGDON, JR.
United States Attorney

By:     */s/ Barbara D. Kocher*
JASON M. KELLHOFER
BARBARA D. KOCHER
MATTHEW L. FESAK
Assistant U.S. Attorney
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Telephone: 919-856-4530
Fax: 919-856-4487
E-mail: jason.kellhofer@usdoj.gov
OH Bar: 0074736
E-mail: barb.kocher@usdoj.gov
NC Bar: 16360
E-mail: matthew.fesak@usdoj.gov
NC Bar: 35276

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this 26th day of March 2019, served a copy of the foregoing filing upon counsel for the defendant in this action by electronically filing the foregoing with the Clerk of Court, using the CM/ECF system that will send notification of such filing to:

**Joseph E. Zeszotarski, Jr.**
115 ½ West Morgan Street
Raleigh, NC 27601

By: */s/ Barbara D. Kocher*
BARBARA D. KOCHER
Assistant U.S. Attorney
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Telephone: 919-856-4530
Fax: 919-856-4487
E-mail: barb.kocher@usdoj.gov
NC Bar: 16360