**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

```
_____  )
                                )
UNITED STATES OF AMERICA,       )
                                )
              vs.               )        CASE NO. 5:18-CR-452-1-FL
                                )
                                )
LEONID ISAAKOVICH TEYF,         )
                                )
              Defendant.        )
_____
                                )
UNITED STATES OF AMERICA,       )
                                )
              vs.               )        CASE NO. 5:18-CR-452-2-FL
                                )
                                )
TATYANA ANATOLYEVNA TEYF,       )
                                )
              Defendant.        )
_____  )
```

**MONDAY, FEBRUARY 10, 2020**
**PRETRIAL CONFERENCE and MOTION HEARING**
**BEFORE THE HONORABLE LOUISE W. FLANAGAN**
**UNITED STATES DISTRICT COURT**

**MICHELLE A. McGIRR, RPR, CRR, CRC**
**Official Court Reporter**
**United States District Court**
**Raleigh, North Carolina**

**<u>APPEARANCES</u>:**

**<u>On Behalf of the Government</u>:**

**BARBARA D. KOCHER, Assistant U.S. Attorney**
U.S. Attorney's Office
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina  27601


**<u>On Behalf of the Defendant (Tatyana Anatolyevna Teyf)</u>:**

**DAVID WILLIAM LONG, Esquire**
**JOSEPH E ZESZOTARSKI, JR., Esquire**

Raleigh, North Carolina  27601



**<u>On Behalf of the Defendant (Leonid Isaakovich Teyf)</u>:**


**F. HILL ALLEN, IV, Esquire**
**Tharrington Smith**
**150 Fayetteville Street, Suite 1800**
**Raleigh, North Carolina  27601**


**ROBERT S. WOLF, Esquire**
**Moses & Singer**
**405 Lexington Avenue, 12th Floor**
**New York, New York 10174**



<u>INTERPRETERS</u>:

**MARIANNE DUHERTOV**
**TATYANA DRAGA**

```
 1              (Monday, February 10, 2010 commencing at 9:35 a.m.)

 2                     P R O C E E D I N G S

 3

 4    (The defendant, Leonid Isaakovich Teyf, escorted into the courtroom

 5                          at 9:00 a.m.)

 6     (The defendant, Tatyana Anatolyevna Teyf, seated at defense table)

 7              THE COURT:  Go morning.

 8              On behalf of the Government, Ms. Kocher, would you

 9    introduce yourself for the record and the person with you.

10              MS. KOCHER:  Thank you, your Honor.

11              Barbara Kocher, Assistant United States Attorney, here on

12    behalf of the Government.  Sitting to my right today is Karen

13    Grinstead, who's our litigation support specialist and is here to

14    assist in previewing some audio for the Court.

15              THE COURT:  Very good.

16              And Mr. Hill, for your client.

17              MR. ALLEN:  Good morning, your Honor.  Hill Allen.

18              THE COURT:  I'm sorry, Mr. Allen.

19              MR. WOLF:  Robert Wolf as well representing Mr. Teyf.

20              THE COURT:  Thank you all.

21              MR. ZESZOTARSKI:  Good morning, your Honor.  Joe

22    Zeszotarski and David Long for Tatyana.

23              MR. LONG:  Good morning.

24              THE COURT:  Very good.

25              Well, let's go ahead and find our interpreters.  Would
```

1    you please stand.  If you would both of you raise your right hand.

2              THE CLERK:  State your name.

3              INTERPRETER DRAGA:  Tatyana Draga.

4              INTERPRETER DUHERTOV:  Marianne Duhertov.

5    (The interpreters, Marianne Duhertov and Tatyana Draga, sworn by the

6                          deputy clerk)

7              INTERPRETER DRAGA:  I do.

8              INTERPRETER DUHERTOV:  I do.

9              THE COURT:  All right.  Very good.  Thank you.

10             Well Ms. Kocher, much has changed since I received the

11   Government's estimate back in of no a three-week trial.  Since, then

12   two defendants have indicated they would be pleading not guilty --

13   rather, guilty -- and I've also ordered severance of this trial.

14             How does that affect your estimate of how long the trial

15   of Mr. Teyf will take?

16             MS. KOCHER:  Your Honor, I don't think those events

17   affect the time of Mr. Teyf's trial.

18             THE COURT:  You still think it's a three-week trial?

19             MS. KOCHER:  I do, your Honor.

20             THE COURT:  Okay.

21             Mr. Allen, what do you think?

22             MS. ALLEN:  Your Honor, particularly with the counts

23   remaining together, I'm certainly unable to sort of tell the

24   Government whether it's -- to speed it up.

25             THE COURT:  So there's some consensus.  How about Ms.

1  Teyf's trial.

2          MS. KOCHER:  Your Honor, at this time the counts against

3  Mrs. Teyf would result in the bulk of the same evidence again.  The

4  biggest difference would be the Counts 27 through 29, of course, do

5  not apply to Ms. Teyf at all and I would estimate perhaps a

6  shortening of three days, maybe four days, as a result.  So I would

7  still say it's two weeks and possibly running over into the third

8  week, your Honor.

9          THE COURT:  Has there been discussion with Ms. Teyf's

10  counsel concerning prospective trial dates?

11          MS. KOCHER:  Your Honor, in all fairness, Mr. Zeszotarski

12  did reach out to me and we were unable to connect prior to court

13  this morning.

14          THE COURT:  Okay, Mr. Zeszotarski.  Good morning.

15          MR. ZESZOTARSKI:  Good morning, your Honor.

16          THE COURT:  What are your thoughts?

17          MR. ZESZOTARSKI:  I think a week and a half to two weeks

18  is a fair estimate for Ms. Teyf's trial.

19          And I did reach out to Ms. Kocher.  I understood she was

20  out of town.  We weren't able to talk before today.  I don't know

21  what kind of clothes the court has open or not.  We obviously will

22  be interested in getting some transcripts from Mr. Teyf's trial as

23  well to prepare for Mrs. Teyf's trial.  And that doesn't take as

24  long as it used to, but it certainly will take some time.

25          THE COURT:  Well, I have so many trials through the

```
 1   spring and summer.  I'm looking at my calendar.  It's going to be in
 2   late summer before I can find two to three weeks.
 3                We can start this trial September 8th.  You all want to
 4   take minute and look at your calendars.
 5   (Attorney Zeszotarski conferring with Attorney Long at counsel table
 6                         briefly off the record)
 7                MR. LONG:  Your Honor, David Long.
 8                I can do that one, but I'm scheduled with you on the 28th
 9   as well.  I'm -- we're going to run right into back to back.  I
10   don't object at all to the date, but I just --
11                THE COURT:  Saying I might get tired of seeing you?
12                MR. LONG:  I might just wear each other out or vice
13   versa.
14                THE COURT:  I think we're both up for it.
15                MR. LONG:  I think we are, too.
16                THE COURT:  I'm coming back from a conference on the West
17   Coast on the 26th, but I could back this up to August 31st.  I'd
18   have enough time.  It's just three days out there.  So maybe that
19   will give you a one-week break, Mr. Long, from the court.
20                MR. LONG:  I'm good on August 31st.
21                THE COURT:  All right.  Why don't we look at that.
22   Everybody just take a minute.  You can consider Labor Day, we will
23   not have court that day.
24                MR. ZESZOTARSKI:  That works, your Honor.
25                MS. KOCHER:  It works for the Government, your Honor.
```

```
 1                THE COURT:  Wonderful.  So we have that decided.
 2                Ms. Teyf's trial will start on August 31st.  And out of
 3      an abundance of caution, I'm going to block out three weeks but it
 4      sounds like we're not going to need that much time.
 5                So how are the depositions going in Tel Aviv?
 6                MS. ALLEN:  Your Honor, I'll let Robert Wolf report more
 7      fully, but we have completed about half of them.  We are scheduled
 8      to complete the remaining half the week later in February that the
 9      Government was available and we anticipate getting them all done.
10      From our standpoint, they've gone very well indeed.  We feel like we
11      have made tremendous progress on the money laundering case --
12                THE COURT:  Okay.
13                MS. ALLEN:  -- without getting into argument about it.
14                THE COURT:  All right.  Well, very good.
15                Would you like to add to that, sir?
16                MR. WOLF:  Your Honor, I did want to just inform the
17      court a little bit -- because I think it's relevant to your LULGS.
18      And I'm not rearguing anything today, but the Court -- the more
19      information the Court has this whole separate trial rulings and the
20      murder for hire being tried with the money laundering case.  The
21      witnesses did testify -- and respectfully, your Honor, I would say
22      they decimated the money laundering case.  Miss he will NOVA in
23      particular who was accused of handling the money organizing
24      accountants to collect the money from STROG EE, the bag man who was
25      coordinating pick ups.  She testified there wasn't even
```

cross-examination against miss he will NOVA with regard to the
facts.  She came in strong.  And in theory, this goes back with
extraordinary recollection and factual detail and I might say, your
Honor -- and, again, I share this to inform the Court because I know
these are tough decisions.  And trying these counts together, of
course, is very sensitive to the defense to ensure Mr. Teyf gets his
fair trial and his rights aren't prejudice; but the
cross-examination of miss sell NOVA is kind of telling.  Instead of
cross-examining and asking her about the underlying facts that's
alleged to be her involvement in this bribery kickback scheme and
collecting money and keeping records, not only, of course, did she
testify that's purely false and manufactured and never happened, but
the cross-examination of her was to show her a transcript from the
murder for hire evidence and just have her look at that and ask her
to comment on it.

And, again, your Honor, respectfully, we have the -- what
is now as things stand -- an extraordinarily strong defense on the
money laundering charges.

And then we have the murder for hire, at least under the
current ruling, which I respectfully submit will then compromise the
strength of our defense with that evidence -- and again, as you saw
in our motion part of our defense in the murder for hire case, okay,
if that is tried before TAT TOOIF -- and your Honor heard, you're
talking about three days of evidence -- prevents us from calling Ms.
Teyf as a witness and really prevents us from presenting our full

1    and complete defense to what is an extraordinarily SUR YUS charge.

2              So again, I'm not here to reargue, but I want to inform

3    the Court as I can along the way.  The orders of trial are not

4    changed if the murder for hire is severed out and tried afterwards.

5    In fact, I think as your Honor's schedule just indicated, that might

6    even be able to fit right after Ms. Teyf's trial but it ensures that

7    Mr. Teyf gets his ability to present his complete defense and not

8    have his rights to a fair trial and to present a defense compromised

9    by trying them together.

10             So as much as we can to keep informing the Court of what

11   the evidence is -- I won't get into the details of Your Honor's

12   decision on dates and everything else -- but it is -- ultimately

13   we're all here to --

14             THE COURT:  Are you making an oral motion for the Court

15   to reconsider its ruling on severing the three murder-for-hire

16   related charges based on this Tel Aviv deposition?

17             MR. WOLF:  Your Honor, I'm not making that motion today,

18   I'm just sharing information with the Court.

19             THE COURT:  Okay.

20             MR. WOLF:  If we want to make that kind of motion, it

21   would be on theory and on paper and with exhibits and properly with

22   a full record; and that's not what I'm doing today, I'm just sharing

23   with the court what occurred because I know the Court was interested

24   and certainly will always be interested in all the evidence that

25   comes out along the way, especially in what's unusual to have trial

1    testimony being taken before a trial actually starts so...

2              THE COURT:  What's your response?

3              MS. KOCHER:  The Government's position could not be

4    further apart from the defendant's perception of, in particular,

5    miss sell November as deposition.

6              THE COURT:  Is that the scope of your cross?  Just to

7    hand the transcript to her, was that the scope of your

8    cross-examinaton?

9              MS. KOCHER:  No, your Honor, it was not.  It was not.

10             THE COURT:  Okay.

11             MS. KOCHER:  In fact, as was said that day, the

12   cross-examination I believe lasted at least as long as if not longer

13   than the direct examination did.  So the Government does not agree

14   at all as would be expected in a --

15             THE COURT:  Well, I'm going to tell this jury that it

16   considers each charge individually.  I'm going to emphasize that.

17   And you have an opportunity to suggest any jury instruction that you

18   think would be appropriate, but I'm going to explain very carefully

19   to the jury that a decision on one count doesn't influence a

20   decision on another where that's appropriate to be explained.  So I

21   think I can emphasize that and take into consideration your

22   concerns.

23             All right.  Let's keep talking though about these

24   depositions.  There are how many of them, six or seven?

25             MR. ALLEN:  Seven, your Honor.  Three have occurred and

1    are already on tape.  There are an additional four to occur

2    beginning Sunday, February 23rd for roughly four days straight and

3    that should conclude them.

4            THE COURT:  How are you proposing the Court to decide any

5    objections?

6            MR. ALLEN:  Your Honor, we had not yet reached that

7    point.  We are certainly at the Court's pleasure.  We do need some

8    time to get the transcripts, get the videotapes.  The next set of

9    depositions is going to occur in a couple of weeks, which is only a

10    couple of weeks before trial -- well, beginning three weeks before

11    trial, so it's that third week out -- and then there will be two

12    weeks afterwards and we'll be flying back from Israel where they're

13    occurring so it will take us a little time.  If we were to have --

14    we haven't given it great thought yet, your Honor.

15            THE COURT:  Well, I'm thinking about it because of how

16    it's going to affect the pace of the trial if I haven't had an

17    opportunity beforehand to consider, but I can appreciate that you

18    don't yet know what your presentation is going to include.

19            MR. ALLEN:  If we were able to get clips from the

20    depositions that will potentially be offered to you, what are --

21    that have objections the Court needs to rule on, that would be our

22    proposal --

23            THE COURT:  That would be helpful.

24            MR. ALLEN:  -- a week in advance.

25            THE COURT:  A week in advance of the trial?

1           MR. ALLEN:  Yes, ma'am.

2           THE COURT:  That's more than enough time.  This isn't

3   going to come up until the case comes to you, right?

4           MR. ALLEN:  That is my, belief your Honor, as far as I'm

5   aware.  I'm not aware of the Government planning to offer any of

6   this evidence in its case in chief.

7           THE COURT:  Ms. Kocher, are you planning to?

8           MS. KOCHER:  The Government wouldn't be able to answer

9   that question at this time, your Honor.

10          THE COURT:  Well, what I want you all to do is as we get

11  closer to the trial, talk about this and tell Ms. Tripp when you're

12  ready to talk to me and we'll find a time for a conference by phone

13  where I can learn what are the scope of these objections and just

14  get an idea as to how much time it's going to take for me to get

15  through this, which would then influence what I want, the clips,

16  from you, okay.

17          MR. ALLEN:  Yes, your Honor.

18          THE COURT:  All right.

19          MS. KOCHER:  Is there a deadline, your Honor, for that?

20          THE COURT:  I'm not going to give you a deadline, but it

21  benefits both sides to get this to me as soon as possible.  And I

22  know you'll operate from that perspective.  Okay.

23          All right.  Now, so Ms. Kocher, you're going to be

24  playing audio that's in Russian and you're going to be playing audio

25  that's in English.

1          MS. KOCHER:  That is correct, your Honor.  More English

2     will be played than Russian given that none of the participants --

3     the jury, the Court, even counsel -- to my knowledge don't

4     understand Russian.  We will play some Russian, of course, to verify

5     voices and participants in the conversation, but at this time we

6     don't anticipate playing lengthy portions of recordings that are in

7     Russian.

8          THE COURT:  If you do play one, are you going to be

9     running the English translation as you understand it on the screen

10    as the person talks?

11         MS. KOCHER:  We would, your Honor.  And in that regard,

12    the parties have designated transcripts and have exchanged them and

13    have made corrections or suggested corrections thereto.  We've

14    called them objections, but I mentioned to counsel this morning

15    before court began that I would anticipate us being able to

16    stipulate to the final versions of the transcripts that would be

17    used as exhibits.

18         THE COURT:  Okay.  So you all are thinking that there's

19    not going to be any disagreement as to what something means in

20    English that I'm going to have to focus on ultimately.  The jury

21    would decide that.

22         MR. ALLEN:  Your Honor, I don't know that we have

23    anything highly material in mind at this time.  Candidly I've not

24    studied every piece of the various recordings that might be offered.

25    There are a lot of them.  I do understand -- and as I have

1    envisioned it, there will be the record I think playing in Russian

2    or whatever -- or in English if it's English speakers and I assume

3    that the transcripts will be up for the jury to see.  And if there

4    are material things that need Your Honor's involvement, certainly we

5    would work together to get those to you.

6         THE COURT:  Well, I wouldn't decide -- I wouldn't decide

7    if there was an incorrect interpretation, that's not my role, but

8    there is a way to give the jury a more informed basis on which to

9    make that decision.

10        And I'm just thinking -- I had one case, you were

11   involved up to a point, in it where a defendant felt that the

12   Government's transcripts were just uniformly wrong.  And so the

13   defendant interpreted the language and the alternative transcripts

14   were made available to the jury in that situation and.  So it was a

15   choreographed moment where when the Government's audio video stopped

16   being played with the transcript running along, then the jury picked

17   up the defendant's competing transcript and read it, but I don't --

18   it doesn't sound to me like we're going to have to worry about

19   something like that in this case.

20        MR. ALLEN:  I believe that is correct, your Honor.  We

21   don't have that kind of uniform nothing they've done is correct --

22   it's much more just making sure that they're not highly material

23   things that we need to engage in that kind of procedural.

24        THE COURT:  Okay.

25        Mr. Zeszotarski, what do you think?

1          MR. ZESZOTARSKI:  I agree with that, your Honor.  There

2  are portions we've designated a few things to the Government that we

3  might use and I don't think there's going to be a dispute about the

4  transcript.

5          THE COURT:  Okay good.  Good.

6          MS. KOCHER:  Going back to your Honor's question if I

7  may.  For the Russian recordings, what the Government has prepared

8  is side by side Russian and English so if in discussing with the

9  Russian-speaking witness the Government can refer to the transcript

10 and easily call the witness's attention to a particular line in that

11 transcript where the witness will be able to read in Russian what is

12 being discussed as well.

13         THE COURT:  Okay.  Can we hear one of your English audios

14 just to see what the quality is?

15         MS. KOCHER:  Certainly.

16        (Audio with video played in open court at 9:56 a.m.)

17          (Audio with video concluding at 9:57 a.m.)

18         THE COURT:  Okay.  That's pretty good quality.

19         MS. KOCHER:  Yes, your Honor, we did believe so.

20         THE COURT:  All right.  Does anybody think a juror needs

21 an assisted listening device to improve the ability to understand

22 what's being said?

23         MR. ALLEN:  No, your Honor.

24         MR. ZESZOTARSKI:  No, your Honor.

25         THE COURT:  Okay.  Okay.

1          MS. KOCHER:  We did bring another clip, your Honor, of

2     Russian, which would be a different recording device, if you wanted

3     to hear that.

4          THE COURT:  Okay.  Certainly doesn't matter the same way

5     it matters with English, but let's go ahead and hear it.  Yes.

6               (Audio played in open court at 9:58 a.m.)

7               (Audio concluding at 9:58 a.m.a)

8          THE COURT:  Okay.  Does anybody want to be heard on that?

9                    (No response)

10          THE COURT:  What if I learn during the voir dire that a

11     prospective juror has knowledge of the Russian language?

12          MS. KOCHER:  The Government would appreciate the Court

13     asking that during voir dire as well as just general knowledge of

14     any Eastern Block countries, Russia and those surrounding it.

15          THE COURT:  What other countries?

16          MS. KOCHER:  Russia, you KRIERNGS Bella ROUS -- we

17     would --

18          THE COURT:  What if do what do they speak in the Ukraine.

19          MS. KOCHER:  I can't answer that, your Honor.

20          THE COURT:  They probably speak Russian or what else.

21          MR. ALLEN:  I think a couple of different languages, your

22     Honor.  Some speak Russian, but also I believe there's a --

23          THE COURT:  Why does that matter if somebody speaks a

24     language other than Russian?

25          MS. KOCHER:  Your Honor, I was stepping outside of just

language and so I will not confuse matters and I apologize for that.
I'll just ask for a supplemental voir dire regarding familiarity
perhaps living in that area of the world.

MR. WOLF:  I don't think it matters, your Honor.  I think
the recording in Russian is the actual the best evidence.

THE COURT:  Do you want someone that speaks Russian on
this jury or do you-all want a motion for cause?

MR. ALLEN:  Your Honor, I think we're not prepared to
answer that just yet.  We may -- we certainly would not want to
disqualify automatically someone who has knowledge of Russian.

THE COURT:  Okay.  Well, and Russian -- knowledge of
Russia is one thing, understanding the Russian language is another.

MR. ALLEN:  And I was being too general.  We would not
automatically want to -- I don't know that we're prepared to say
right now that we would move for cause on someone --

THE COURT:  I'm going to have to tell that person that
the evidence is not the Russian that you hear, the evidence is the
translation, the interpretation of it.  You're going to have to --
and if you think there's a difference between the two, you are
governed by the English.  Don't you think I have to tell the jury
that?  Are you with me on that.

MR. ALLEN:  I understand what your Honor is saying and
agree with that.  What I was simply saying, right now we would not
want to request your Honor to move for cause on someone simply
because they speak Russian.

         THE COURT:  Okay.  There's no consensus here and that's
perfectly appropriate.  I just thought we ought to talk about it now
because this could be something that takes up a lot of time during
jury selection; but you all agree what the law is, as I understand
it, that the juror doesn't receive what's said in Russian as
evidence, rather, it's the English interpretation of it that's the
evidence of what that person said.

         Do you agree, Mr. Allen, that's the law?

         MR. ALLEN:  Your Honor, that -- I have to say things have
changed so much since I grew up in eastern North Carolina that we're
thinking about whether there are many Russian speaking folks here,
but it's true there are many military families and others.

         THE JUROR:  Just what you agree that's what the law is.
Yes or no.

         MR. ALLEN:  I don't know.

         THE COURT:  Mr. Zeszotarski, what do you understand?

         MR. ZESZOTARSKI:  I think in circumstances of this case,
your Honor, that that is correct.

         THE COURT:  Okay.  Ms. Kocher, what do you understand?

         MS. KOCHER:  Yes, your Honor, I do agree.

         MR. WOLF:  If I may add one more thing.

         There's a lot of portions of the recordings that are --
the evidence, as well, for example, the surrounding sound or what
actually exists that depicts what a conversation takes place.  If
there's a loud noise that occurs during the entire course of the

information, then certainly the actual evidence -- and I think in
that sense, not the words but the conditions that are surrounding
the conversation that is the actual evidence --

THE COURT:  Sure.

MR. WOLF:  -- and would be relevant.

THE COURT:  Sure.  Nobody is saying to disregard that.
Okay.  We'll see if it happens.  It might not be an issue, but we've
covered it.

Are there any anticipated Daubert motions, Mr.
Zeszotarski?

MR. ZESZOTARSKI:  I don't believe so, your Honor.  I need
to follow up with Ms. Kocher about one issue on the experts, but I
don't -- if the expert that they have designated with respect to the
Russian law matters I think will work through that and I don't think
there will be a Daubert motion, your Honor.

MR. ALLEN:  Possibly one, your Honor, combined with some
type of motion to strike a portion of one expert's testimony on
Russian law, but we will -- we are looking at that and understand
you will want to see that in time to exercise Your Honor's
responsibilities under -- as a gatekeeper.

THE COURT:  I'm going to have to give you a deadline for
filing that motion.

Ms. Kocher, any Daubert motions?

MS. KOCHER:  Not that I am aware of at this time, your
Honor.

1          THE COURT:  Okay.  All right.

2          Mr. Allen keep standing up.  Have you thought about when

3   you're going to file that motion?

4          MR. ALLEN:  Your Honor, we are at your pleasure.  We

5   would propose a week before trial.

6          THE COURT:  That doesn't give the Government much time to

7   respond or me to hear it, does it.  So let's talk about a more

8   realistic deadline.

9          MR. ALLEN:  We are going to be spending a week in Israel

10  only the third week in advance of trial to accommodate the

11  Government's schedule; and so that's part of it, is having done that

12  trip, it takes more out of one than --

13         THE COURT:  So you want to get this filed before you go

14  to Israel then?

15         MR. ALLEN:  Your Honor, no.  If we could have it not due

16  the Monday after we get back from Israel ideally.

17         THE COURT:  Again, when are you going to Israel?

18         MR. ALLEN:  The Sunday -- the 23rd and coming back late

19  that week.

20         THE COURT:  Okay.  You can't get it filed by the 21st?

21  Why couldn't you do that?  There are two of you standing up.  Come

22  on.

23         MR. ALLEN:  Your Honor, we will do whatever your Honor

24  requires us to and we will work hard -- and we have been working

25  hard.  So if you tell us when you need it, we will get it to you.

 1          THE COURT:  Okay.

 2          MR. WOLF:  Your Honor, may I ask the Court's indulgence.

 3   There is a lot of preparation going on now for the upcoming

 4   depositions and it's really less than two weeks away until we leave.

 5   If we could -- I know one week before trial is too short.  Two weeks

 6   before trial would put us right after we get back.  If the Court

 7   would give us that additional time that I think would be helpful to

 8   defense to --

 9          THE COURT:  Let's talk about who this person is and where

10   is this person in your order of proof.  So can you give me the name

11   of this person.

12          MR. ALLEN:  His name is drew Hal he know DER.  He is

13   tendered as an expert on Russian law by the Government.

14          THE COURT:  Okay.  All right.  So where is he in your

15   order of proof?

16          MS. KOCHER:  Your Honor, understanding that we are six

17   weeks from trial or so at this time -- if I can have just a moment.

18          THE COURT:  Yes.  Certainly.

19          (Attorney Kocher reviewing documents)

20          MS. KOCHER:  He would be toward the end of the case, your

21   Honor.

22          THE COURT:  Okay.  Towards the end.  Well, that's good.

23          All right.  You can file it on the 9th.

24          MR. ALLEN:  Thank you, your Honor.

25          THE COURT:  If it's something that perhaps maybe you'll

1  even work out before then.  Okay.

2              MR. WOLF:  Thank you, your Honor.

3              MR. ALLEN:  Thank you, your Honor.

4              THE COURT:  Ms. Kocher, any response?  Could you have

5  that filed by the 16th?

6              MS. KOCHER:  Without seeing the motion, your Honor -- and

7  this hasn't been discussed between the parties -- I've got no idea

8  what that might be.  So clearly we will be in a more pressed

9  position between the 9th and the 16th than defense is between now

10  and the 21st.

11             THE COURT:  Okay.  Well, I won't give you a deadline to

12  file a response, but it will be something we talk about on the 16th.

13  How about that.

14             MS. KOCHER:  Thank you, your Honor.

15             MR. ALLEN:  Thank you, your Honor.

16             THE COURT:  All right.  Does anybody have questions about

17  jury selection.  Mr. Zeszotarski, do you?

18             MR. ZESZOTARSKI:  I do not, your Honor.

19             THE COURT:  Okay.  Mr. Allen, do you?

20             MR. ALLEN:  No, your Honor.  Thank you.

21             THE COURT:  Good.  Okay.  All right.

22             Well, I can tell you one thing.  I don't have a crystal

23  ball, but I don't need one to know that I'm not using your verdict

24  sheet, okay.  I've never seen one as wordy as this.  Whew.

25             MR. ALLEN:  Your Honor, it tracks the language of the

1  indictment.

2         THE COURT:  Well, they're going to have a copy of the

3  indictment and they can read it if they want to.  So, yeah.

4         MR. ALLEN:  Yes.

5         MR. ZESZOTARSKI:  Your Honor, I think I'm guilty of that

6  because I was sort of delegated that among our crowd.  And the

7  reason I did it that way -- and now that your Honor mentioned

8  that -- I did that because the trial I just did was with Judge

9  Dever.  Judge Dever does it that way because he doesn't send the

10 indictment back to the jury.  So that's the explanation and I

11 apologize.

12        THE COURT:  I'll take Mr. Allen off the hot seat.  He

13 wasn't throwing you under the bus though.

14        MR. ALLEN:  I appreciate his great work.

15        THE COURT:  All right.

16        Well, it's good for all of us to be reminded that there's

17 kind of a separate set of decisions this jury is going to have to

18 make on forfeiture.  Does anybody want to respond to the

19 Government's forfeiture verdict.

20        MR. ZESZOTARSKI:  And, your Honor, I realized driving

21 down here yesterday that I had not filed anything in that regard and

22 I need to.  The draft instruction that I have for forfeiture is

23 relatively short and I can get that in soon.

24        THE COURT:  Okay.  I'll give you a week.

25        MR. ZESZOTARSKI:  That would be great.  Thank you.

```
 1              MR. ALLEN:  If we may piggy back in on his excellent
 2    work, we would be grateful.
 3              THE COURT:  The motion to copy is allowed.
 4              MR. ALLEN:  Thank you, your Honor.
 5              THE COURT:  All right.
 6              Well, I am about at the end of my list.  And this has
 7    been helpful to the Court, but we're altogether and we shouldn't
 8    leave here if there is something that anybody thinks needs to be the
 9    subject of some discussion that might promote efficiency down the
10    road.
11              I'll turn to Ms. Kocher.  Can you think of anything?
12              MS. KOCHER:  No, your Honor.  There might be an *ex parte*
13    motion coming your way within the next week but beyond that, the
14    404(b) and the JEFRNS and the *Brady* are due the 18th, which we
15    anticipate complying with.
16              THE COURT:  Okay.  Good.
17              How about for Mr. Teyf?
18              MR. ALLEN:  For Mr. Teyf, nothing, your Honor.
19              MR. WOLF:  Nothing.
20              MR. ALLEN:  Thank you.
21              THE COURT:  Okay.  All right.
22              For Mrs. --
23              MR. ZESZOTARSKI:  Nothing, your Honor.  Thank you.
24              THE COURT:  No?  All right.
25              I am reminded, there is this motion for more time.  You
```

feel burdened by my deadline for jury instructions and whatnot.

MR. ALLEN:  Your Honor, no, it's not a question of burden, it is a question of making sure we are getting all the evidence including, for example, the materials we will receive next week right before we go to Israel.  We're still taking depositions.  There may be a few additional jury instructions that we would want to tender.  I'm reminded, of course, as your Honor, of course, knows that the typical deadline is one week in advance of trial and Rule 30 of the Federal Criminal Rules, of course, refers to close of evidence or such earlier time as the Court reasonably sets.  We have submitted the majority of what we would propose according to the deadline.

There were just a few additional things we were looking at in trial to think about as we formulate and not something that should prejudice anyone.

THE COURT:  I'm not going to reopen up my deadline that's expired now, but I can tell you this.  If anybody thinks that events warrant offering some supplementation, you can go ahead and offer it.  How about that.

MR. ALLEN:  Thank you, your Honor.  If there is something that -- thank you, your Honor.

THE COURT:  Okay.  Anything else?

MS. KOCHER:  Nothing.  Not from the Government, your Honor.

THE COURT:  Have you understood everything that's been

interpreted for you?  Are you satisfied with the interpreter
services?

             DEFENDANT LEONIC TEYF? Yes, your Honor.

             THE COURT:  Good.

             How about you, are you satisfied?

             DEFENDANT TATYANA TEYF:  Yes.  Thank you.  I am
satisfied.

             THE COURT:  Have you been hearing the interpreter.

             DEFENDANT TATYANA TEYF:  It's a little bit distracting
from the --

             THE INTERPRETER:  It's distracting for me a little bit.
I better hear it in English.

             THE COURT:  Okay.  That's your decision to make.

             DEFENDANT TATYANA TEYF:  I know.  I know, your Honor.
Thank you.

             THE COURT:  Okay.  And we're going to have the two of you
at trial.  Has that been decided?

             INTERPRETER DUHERTOV:  Yes, your Honor.

             THE COURT:  Are you having any issues with our equipment
or are we using yours?

             INTERPRETER DRAGA:  Your Honor, I believe your equipment
works fine.  There was some things we had to work out to make sure
we know how to work it.  I believe it's me, Marianna, and there may
be one or more -- one or even two more interpreters that will be
present.

1          THE COURT:  So we will have plenty.  Well very good,

2   okay.

3               Well, thank you all.

4

5                    (Hearing concluding at 10:14 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<pre>
 1                    UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF NORTH CAROLINA

 3

 4                 CERTIFICATE OF OFFICIAL REPORTER

 5

 6              I, Michelle A. McGirr, RPR, CRR, CRC, Federal

 7    Official Court Reporter, in and for the United States District Court

 8    for the Eastern District of North Carolina, do hereby certify that

 9    pursuant to Section 753, Title 28, United States Code, that the

10    foregoing is a true and accurate transcript of my stenographically

11    reported proceedings held in the above-entitled matter and that the

12    transcript page format is in conformance with the regulations of the

13    Judicial Conference of the United States.

14

15    Dated this _____ day of _____, 2020

16

17                              /s/  Michelle A. McGirr
                                MICHELLE A. McGIRR
18                              RPR, CRR, CRC
                                U.S. Official Court Reporter
19

20

21

22

23

24

25
</pre>